**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,<br><br>Plaintiffs,<br><br>v.<br><br>HONDA MOTOR COMPANY, LTD.; AMERICAN HONDA MOTOR COMPANY INC.; AMERICAN HONDA FINANCE CORP.; HONDA OF AMERICA MANUFACTURING, INC.; HONDA MANUFACTURING OF ALABAMA, LLC and HONDA MANUFACTURING OF INDIANA, LLC,<br><br>Defendants. | Civil Action No. 2:21-CV-390-JRG-RSP<br><br>**JURY TRIAL DEMANDED**<br>**ORAL ARGUMENT REQUESTED** |

<u>**DEFENDANTS' MOTION TO DISMISS**</u>
<u>**AND ALTERNATIVE MOTION TO TRANSFER**</u>

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......................................................................................... 1

II. BACKGROUND ............................................................................................ 3

    A. IV's Complaint ................................................................................... 3

    B. Honda's Connections to the Central District of California and Lack of Venue in this District ......................................................................... 3

    C. AHM's Contractual Relationship with the Dealers .......................... 5

III. STATEMENT OF THE ISSUES PURSUANT TO LOCAL RULE 7(a)(1) ............... 9

IV. LEGAL STANDARD ..................................................................................... 9

    A. Venue—FRCP 12(b)(3) ...................................................................... 9

    B. Failure to State a Claim—FRCP 12(b)(6) ........................................ 11

    C. Transfer under 28 U.S.C. § 1404(a) ................................................. 11

V. ARGUMENT .............................................................................................. 12

    A. This District Is an Improper Venue for the American Honda Companies ........... 12

    B. IV Fails to State a Claim for which Relief Can Be Granted Regarding Indirect Infringement .................................................................... 22

    C. Alternatively, This Case Should be Transferred to the Central District of California ......................................................................... 24

VI. CONCLUSION ........................................................................................... 30

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)........................................................................................26

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 (E.D. Tex. 2013)..............................................................................26

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*,
   6 F.4th 1283 (Fed. Cir. 2021) ..................................................................................*passim*

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020).........................................................................................29

*Arigna Tech. Ltd. v. Volkswagen AG*,
   Case No. 2:21-CV-00054-JRG-RSP, D.I. 415 at 11 (E.D. Tex. Jan. 18, 2022)......2, 17, 18, 21

*Arigna Tech. Ltd. v. Volkswagen AG*,
   Case No. 2:21-CV-00054-JRG-RSP, D.I. 424 (E.D. Tex. Jan. 20, 2022).........................2, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................11, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................11

*In re Biosearch Techs., Inc.*,
   452 F. App'x 986 (Fed. Cir. 2011) ..................................................................................26

*Bowling v. Willis*,
   Case No. 4:18-CV-610-ALM-CAN, 2019 WL 2517090 (E.D. Tex. Apr. 2,
   2019) ..............................................................................................................22, 23

*Chapterhouse, LLC v. Shopify, Inc.*,
   No. 2:18-CV-00300, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) .....................................11

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ..........................................................................................22

*Commil USA, LLC v. Cisco Sys., Inc.*,
   575 U.S. 632 (2015)......................................................................................................11

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
   2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ...................................................................23

*Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*,
   No. 6:14-CV-751, 2015 WL 11143431 (E.D. Tex. Aug. 31, 2015)........................................26

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017)....................................................................................10, 13

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005)..............................................................................................11

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
   No. 2:17-CV-728, 2018 WL 2544564 (E.D. Tex. June 4, 2018) ...........................................13

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009).................................................................................... *passim*

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*,
   No. 2:15-CV-01702-RWS-RSP, 2017 WL 1109865 (E.D. Tex. Mar. 24, 2017)...................25

*Godo Kaisha IP Bridge 1 v. Intel Corp.*,
   No. 2:17-CV-00676-RWS, 2018 WL 11363367 (E.D. Tex. Sept. 28, 2018)...................27, 29

*Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*,
   No. 2:17-CV-00100-JRG-RSP, 2017 WL 4076052 (E.D. Tex. Sept. 14, 2017).....................25

*In re Google Inc.*,
   No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ...................................................27

*In re Google LLC*,
   949 F.3d 1338 (Fed. Cir. 2020)..........................................................................10, 14, 15, 18

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)...................................................................................26, 28, 29

*In re HP Inc.*,
   826 F. App'x 899 (Fed. Cir. 2020) ........................................................................................12

*Kranos IP Corp. v. Riddell, Inc.*,
   No. 2:17-CV-443, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017)...........................................11

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011)..............................................................................................26

*Mobilemedia Ideas LLC v. Research in Motion Ltd.*,
   No. 10-CV-113, 2011 WL 13137111 (E.D. Tex. Aug. 30, 2011) .........................................29

*NextGen Innovations, LLC v. II-VI, Inc.*,
   No. 20-CV-854, Dkt. 38 (E.D. Tex. July 2, 2021)...................................................................27

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009)..................................................................................28

*Omega Patents v. Bayerische Motoren Werke AG*,
    508 F. Supp. 3d 1336 (N.D. Ga. 2020) .....................................................................18

*Oyster Optics, LLC v. Coriant Am. Inc.*,
    No. 2:16-CV-1302, 2017 WL 4225202 (E.D. Tex. Sept. 22, 2017)........................27

*Soverain IP, LLC v. AT&T, Inc.*,
    No. 2:17-CV-293, 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017) ..........................13

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017)......................................................................................10, 12

*In re Toa Techs., Inc.*,
    543 F. App'x 1006 (Fed. Cir. 2013) .........................................................................26

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)................................................................................30

*Unicorn Energy GMBH v. Tesla, Inc.*,
    No. 2:20-CV-00338-JRG, 2021 WL 4034515 (E.D. Tex. Sept. 3, 2021) ........24, 25

*Uniloc 2017 LLC v. Google LLC*,
    No. 2:18-CV-00504-JRG-RSP, 2020 WL 3064460 (E.D. Tex. June 8, 2020)................27, 30

*Uniloc USA, Inc. v. Apple Inc.*,
    No. 2:17-CV-00258-JRG, 2017 WL 11553227 (E.D. Tex. Dec. 22, 2017) ............12

*In re Verizon Bus. Network Servs. Inc.*,
    635 F.3d 559 (Fed. Cir. 2011)..................................................................................26

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...................................................................................28

*In re Volkswagen of America, Inc.*,
    545 F.3d 304 (5th Cir. 2008) .............................................................11, 12, 24, 28

*West View Research, LLC v. BMW of N. Am., LLC*,
    No. 16-CV-2590, 2018 WL 4367378 (S.D. Cal. Feb. 5, 2018)...............................18

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018)...................................................................9, 10, 21

**Statutes**

28 U.S.C. § 1391.................................................................................................................24

28 U.S.C. § 1400 ...................................................................................................9, 10, 12, 24

28 U.S.C. § 1404 ...........................................................................................................1, 3, 9, 11

28 U.S.C. § 1406 ...........................................................................................................................9

Tex. Occ. Code § 2301.476 .......................................................................................................14

**Rules**

Fed. R. Civ. P. 8 .........................................................................................................................23

Fed. R. Civ. P. 12(b)(3) .......................................................................................................9, 10

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1, 2, 9, 11

Fed. R. Civ. P. 45(c) ..................................................................................................................26

**Other Authorities**

Restatement (Third) of Agency § 1.01 .....................................................................................15

## I.      INTRODUCTION

Defendants Honda Motor Co., Ltd., American Honda Motor Co., Inc., American Honda Finance Corp., Honda of America Mfg., Inc., Honda Manufacturing of Alabama, LLC, and Honda Manufacturing of Indiana, LLC (collectively, "Defendants" or "Honda")[1] move to dismiss Intellectual Ventures I LLC and Intellectual Ventures II LLC's (collectively, "Plaintiffs" or "IV") complaint on two grounds: (1) improper venue pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(3) as to the American Honda Companies and (2) failure to state a claim pursuant to FRCP 12(b)(6) as to IV's claims for induced and contributory infringement.  Alternatively, Defendants move to transfer this suit to the Central District of California under 28 U.S.C. § 1404.

*Improper Venue:* As is evident from the complaint, the American Honda Companies, to the extent they still exist, do not reside in or have a regular and established place of business in the Eastern District of Texas.  Therefore, to support venue, Plaintiffs argue that certain independent dealers of Honda products are located in the District, and that their places of business should be imputed to one or more of the American Honda Companies.  D.I. 1 ¶ 11.  But these dealers are separate and independent corporations, and their activities cannot properly be imputed to the American Honda Companies for the purpose of establishing venue over those separate entities.  As the Federal Circuit recently explained, "where . . . companies have maintained corporate separateness, the place of business of one corporation *is not imputed to the other* for venue purposes." *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1289 (Fed. Cir. 2021).

IV nonetheless appears to contend that the dealers should be found to satisfy venue for the American Honda Companies for two reasons: (1) the dealers are agents of the American Honda

---

[1] American Honda Motor Company, Inc., American Honda Finance Corp., Honda of America Manufacturing, Inc., Honda Manufacturing of Alabama, LLC, and Honda Manufacturing of Indiana, LLC are referred to herein collectively as the "American Honda Companies."

Companies; or (2) the American Honda Companies have ratified the dealers' business locations as their own. Neither theory is supported by the facts here, or permitted under current Federal Circuit precedent. For Honda of America Mfg., Inc., Honda Manufacturing of Alabama, LLC, and Honda Manufacturing of Indiana, LLC, those entities no longer exist, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. American Honda Finance Corp. merely offers financing to purchasers and lessees, and does not engage in the activities IV alleges for an agency relationship. As to California-based American Honda Motor Co., Inc., its relationship with each dealer is a contractual, arms-length relationship, and it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as required for an agency or ratification theory. *Andra*, 6 F.4th at 1289–90. Although Defendants acknowledge this Court recently reached a different conclusion in the context of different companies in *Arigna Tech. Ltd. v. Volkswagen AG*, Case No. 2:21-CV-00054-JRG-RSP, D.I. 415 at 11 (E.D. Tex. Jan. 18, 2022) (hereinafter, "*Arigna*"),[2] Defendants respectfully suggest that the Court should reach a different conclusion under the facts set forth in this motion (which overlaps with certain of Defendants' still-pending venue motions in that case), or that, alternatively, the conclusion would be inconsistent with the Federal Circuit's decision in *Andra*. Under the Federal Circuit's decision in *Andra*, IV has failed to set forth a *prima facie* case demonstrating that the American Honda Companies have a regular and established place of business in this District.

**Failure to State a Claim**: In addition, IV's indirect infringement allegations fail to state a claim under FRCP 12(b)(6). Indirect infringement requires, at a minimum, knowledge of the Patents-in-Suit and intent to infringe (for inducement) or knowledge that components infringe (for contributory infringement). IV fails to provide any factual basis to allege that Honda had intent to

---

[2] *See also Arigna*, D.I. 424 (E.D. Tex. Jan. 20, 2022).

infringe, and particularly fails to allege with sufficient specificity that Honda Motor Co. had knowledge of the Patents-in-Suit or intent to infringe.  Its claims should therefore be dismissed.

***Motion to Transfer****:*  Regardless of whether the Court concludes venue is proper, the more convenient venue for this particular litigation is the Central District of California ("Central District") pursuant to 28 U.S.C. § 1404(a).  Accordingly, if the Court declines to dismiss the case, Defendants respectfully request that it be transferred to the Central District of California.

## II.   BACKGROUND

### A.   IV's Complaint

IV filed its Complaint on October 19, 2021, alleging that Defendants infringe eleven patents by manufacturing and selling certain vehicles.  *See* D.I. 1.  Each IV entity is a Delaware company having a principal place of business in Bellevue, Washington.  D.I. 1 ¶ 2–3.  There is no indication that IV maintains a physical presence in this District or engages in business activities here.  In addition, none of the Patents-in-Suit lists an inventor residing in this District or includes an assignee based in this District.  By contrast, the named inventors and prosecution counsel for several of the Patents-in-Suit have California connections.  For example, the five named inventors of the '004 Patent (Ex. 1 (U.S. Pat. No. 7,891,004)) and three of the four named inventors of the '158 patent (Ex. 2 (U.S. Pat. No. 9,232,158)) were based in California during prosecution (including three in the Central District), and appear to be there today.[3]  The '004 Patent was prosecuted in part by Santa Monica-based attorney Bruce Neel of Greenberg Traurig, LLP, which is located in the Central District.  Ex. 3 ('004 Pat. Pros. History, Misc. Incoming Letter dated 2006-06-15).  In addition, the '771 Patent (U.S. Pat. No. 7,382,771) is maintained by Knobbe Martens in Irvine (in the Central District).  Ex. 4 ('771 Pat., Public Pair Attorney Correspondence Address).

### B.   Honda's Connections to the Central District of California and Lack of Venue

---

[3] The fourth named inventor appears to be located outside of this District in Austin. Ex. 2.

███████████████████████

**in this District**

Defendants American Honda Motor Co., Inc. ("AHM") and American Honda Finance Corp. ("AHFC") are both incorporated in California and have their headquarters in Torrance, CA within the Central District. AHM employs more than 2,400 people in California, including 2,090 people at its headquarters in the Central District. Ex. 5 (Adair Decl.) ¶ 12. The headquarters of both AHM and AHFC are about 20 miles from the Central District's West First Street courthouse and East Temple Street courthouse and are not significantly further from the courthouses in Santa Ana and Riverside. Exs. 6–9 (Google Maps, C.D. Cal. Courthouses). Honda Motor Co., Ltd. ("HMC") is incorporated and headquartered in Japan. Ex. 5 ¶ 3. The remaining defendants, Honda of America Mfg., Inc. ("HAM"), Honda Manufacturing of Alabama, LLC ("HMA"), and Honda Manufacturing of Indiana, LLC ("HMI"), no longer exist, and should therefore be dismissed. *Id.* ¶ 11. Nonetheless, none of these defendants is incorporated in Texas or has a place of business in this District. HAM was a subsidiary of AHM, and was an Ohio corporation with corporate headquarters in Ohio. HMA was an Alabama corporation with corporate headquarters in Alabama. HMI was an Indiana corporation with corporate headquarters in Indiana.

Honda employees knowledgeable about, and documents related to, the research, development, and design of Honda's Accused Vehicles,[4] along with sales and marketing related to the Accused Vehicles, are most likely to be located in California or Ohio. *Id.* ¶ 14. Honda is not aware of such documents or employees in this District. *Id.* No manufacturing or production of the Accused Vehicles occurs in this District. *Id.* ¶ 2. Although AHFC has two locations in Irving, Texas (which is outside of this District), AHFC provides financing for Honda car

---

[4] The Accused Honda Vehicles include the Honda Pilot, Honda Odyssey, Honda Passport, Honda Insight, Honda Accord, Honda Civic, Honda CR-V, Honda Clarity, Honda Fit, Honda HR-V, Honda Ridgeline, Acura RDX, Acura TLX, Acura NLX, and Acura MDX.

purchases, and has no involvement in the design, development, or sales of any accused products. *Id.* ¶¶ 8–9.  As such, Honda expects its witnesses required to testify at trial will hail from the Torrance headquarters of AHM or from Tokyo or Ohio.  For example, Honda has identified the following AHM employees located in California as having relevant knowledge:

- ████████████, Manager, who was responsible for Honda automotive product planning;
- ████████████, Senior Manager, who was responsible for Honda marketing;
- ████████████, Manager, who was responsible for Acura product planning; and
- ████████████, Senior Manager, who was responsible for Acura marketing.

The Accused Honda Vehicles are designed and manufactured by Honda-affiliate companies, none of which is located in this District.  Although the American Honda Companies maintain facilities, offices, and other regular places of business throughout the U.S., they have no such facility, office, or other place of business in this District.  *Id.* ¶¶ 4, 7, 9.  The Complaint makes passing reference to a Honda Rider Education Center, Parts Center, and American Honda Finance Center.  D.I. 1 ¶ 6.  These facilities are located in Irving, TX, which is not in this District.  *Id.*

## C.     AHM's Contractual Relationship with the Dealers

Paragraphs 11–23 and 26–27 of IV's Complaint include allegations purportedly directed at venue, identifying eight independently owned and operated dealers located in this District that sell Honda-branded vehicles: Tower Honda of Longview, Jack O' Diamonds Honda, Orr Honda, Loving Honda, Matthews Honda of Paris, Twin City Honda, Honda Cars of McKinney, and Honda of Frisco (collectively, "Dealers").  IV does not allege that the Defendants themselves have regular and established places of business in this District, and instead allege that the American Honda Companies engage in certain activities related to the Dealers that purportedly establishes venue. In particular, IV alleges that these Dealers "are regular, continuous, and established physical places of business of Honda," and are "established, ratified, and/or controlled by Honda as authorized dealers."  *Id.* ¶ 12, *see also id.* ¶¶ 14–24.

5

The relationship between AHM and the Dealers is contractual. Ex. 5 ¶¶ 20, 32.  AHFC has no relationship with Dealers other than by providing financing to purchasers and lessees of Honda vehicles. *Id.* ¶ 8.  The remaining American Honda Companies—HAM, HMA, and HMI—do not have a contractual relationship with the Dealers at all. *Id.* ¶¶ 11, 18.  AHM and the other American Honda Companies do not have any direct or indirect ownership interest in any of the Dealers. *Id.* ¶¶ 21, 22.  Moreover, none of the owners or operators of the Dealers is an employee or agent of the American Honda Companies. *Id.* ¶¶ 22, 25.

Instead, AHM and each Dealer are contractual parties to an Automobile Dealer Sales and Service Agreement ("SSA").

*Honda Sales Directories and Websites:* AHM lists the Accused Honda Vehicles on its website and permits potential Honda customers to search for dealers by location for the test driving and purchasing of vehicles from the dealer. Ex. 5 ¶ 23.  The American Honda Companies do not sell vehicles to end customers. *Id.*

*Honda Names, Branding, Trademarks, and/or Trade Dress:* ████████████

*Geographical Dealer Locations:* ████████████

*Distributing Various Literature:*

*Services, Maintenance, Warranties, and Recalls:*

*Dealer Employees and Agents:*



## III.    STATEMENT OF THE ISSUES PURSUANT TO LOCAL RULE 7(A)(1)

1. Whether the Court should dismiss this patent case under FRCP 12(b)(3) and 28 U.S.C. § 1406 for improper venue with respect to the American Honda Companies because—to the extent those corporate entities still currently exist—they do not reside in this District, nor have they committed acts of infringement and have a regular and established place of business in this District, as required under 28 U.S.C. § 1400.

2. Whether the Court should dismiss this patent case under FRCP 12(b)(6) for failure to state a claim for induced or contributory infringement against all the Defendants.

3. Whether, if the Court determines not to dismiss the case, the Court should alternatively transfer the case to the Central District of California under 28 U.S.C. § 1404(a) because that venue is more convenient to the parties and witnesses in this particular action.

## IV.    LEGAL STANDARD

### A.    Venue—FRCP 12(b)(3)

Under Rule 12(b)(3), a party may move to dismiss an action on the basis of improper venue. Once challenged, the burden of sustaining venue lies with the plaintiff. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). Upon a finding that a case lay venue in the wrong division or district, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to

---

[5] All emphasis added unless otherwise noted.

any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  In patent cases,

28 U.S.C. § 1400(b) is the "sole and exclusive provision controlling venue in patent infringement

actions" and is not supplemented by the general venue statutes.  *TC Heartland LLC v. Kraft Foods*

*Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017).  Pursuant to 28 U.S.C. § 1400(b), venue lies "in

the judicial district where the defendant resides" or "where the defendant has committed acts of

infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).

To show a defendant has a "regular and established place of business": "(1) there must be

a physical place in the district; (2) it must be a regular and established place of business; and (3) it

must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  A

"regular and established place of business" also requires "the regular, physical presence of an

employee or other agent of the defendant conducting the defendant's business at the alleged 'place

of business.'"  *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020).  Where venue is based on

activities of a related entity, "a threshold inquiry . . . is whether the [related companies] have

maintained corporate separateness."  *Andra Grp., LP*, 6 F.4th at 1289.  "[W]here related companies

have maintained corporate separateness, the place of business of one corporation is not imputed to

the other for venue purposes."  *Id.*  "[T]he mere fact that a defendant has advertised that it has a

place of business or has even set up an office is not sufficient; the defendant ***must actually engage***

***in business*** from that location."  *Id.* (quoting *In re Cray*, 871 F.3d at 1364); *see also In re ZTE*

*(USA) Inc.*, 890 F.3d at 1015 (holding that a contractual relationship between two entities "does

not necessarily make [one company's] call center 'a regular and established place of business' of

[a second company]").

The plaintiff bears the burden of establishing proper venue as to each defendant.  *ZTE*, 890

F.3d at 1013.  "Under Rule 12(b)(3), which allows for dismissal for improper venue, the district

court assumes the truth of the allegations in the plaintiff's complaint, unless contradicted by the defendant's affidavits. . . . [W]hen a defendant submits affidavits or evidence controverting specific facts alleged in a plaintiff's complaint, a court is no longer required to accept those controverted facts as true." *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017) (internal citations omitted).

### B.   Failure to State a Claim—FRCP 12(b)(6)

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555). While "[a] court must accept the complaint's factual allegations as true . . . the Court need not accept as true legal conclusions couched as factual allegations." *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300, 2018 WL 6981828, at *1 (E.D. Tex. Dec. 11, 2018) (citation omitted). "[L]iability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) (quotation omitted). A claim for contributory infringement similarly requires that a defendant "knew that the combination for which its components were especially made was both patented and infringing." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (quotation omitted).

### C.   Transfer under 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." First, the movant must show that the claims "might have been brought in the destination venue." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 312 (5th Cir.

2008) ("*Volkswagen II*").  Second, the party seeking transfer must show that the "transferee venue is clearly more convenient."  *Id.* at 315; *see also In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re HP Inc.*, 826 F. App'x 899, 904 (Fed. Cir. 2020) (transferring case where transferee venue was "clearly more convenient" because potential trial witnesses, sources of proof, and relevant third party corporate entities were located there, while neither party was located in the transferor venue).  Courts in this District weigh certain well-established "private" and "public" interest factors in determining whether transfer is appropriate.  *See Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-CV-00258-JRG, 2017 WL 11553227, at *4 (E.D. Tex. Dec. 22, 2017).

## V.   ARGUMENT

### A.   This District Is an Improper Venue for the American Honda Companies

The American Honda Companies do not reside in this District and do not have a regular and established place of business in this District.  Moreover, the activities of the separate and independent Dealers IV identifies cannot be imputed to the American Honda Companies.  The Dealers do not serve as agents of the American Honda Companies, and the American Honda Companies do not ratify the Dealers' locations as their own.  Accordingly, venue is improper with respect to the American Honda Companies.

#### 1.   The American Honda Companies Do Not Reside in This District

A "domestic corporation 'resides' only in its state of incorporation for purposes of the patent venue statute."  *TC Heartland LLC*, 137 S. Ct. at 1517.  As noted above in Section II.B, none of the American Honda Companies is incorporated in this District and thus none "resides" in this District under § 1400(b).  *Id.*

#### 2.   The American Honda Companies Do Not Have a Regular and Established Place of Business in This District

IV does not allege that the American Honda Companies themselves have a physical place of business in this District and accordingly does not attempt to show that venue requirements are

12

met by any such place of business.  *See* D.I. 1 ¶¶ 12–27.  Nor could it, as the American Honda Companies do not have any office, warehouse, or facility in this District and do not own, lease, or rent any property in this District.  Ex. 5 ¶ 25.  Instead, IV attempts to establish venue by attributing the Dealers' locations to the American Honda Companies.  *See* D.I. 1 ¶¶ 12–27.  This attempt fails. *Cray* requires the physical place of business to "be the place of the defendant."  *Cray*, 871 F.3d 1360.  While the dealerships are a physical place, these physical places are not "of the defendant." *Id.*; Ex. 5 ¶ 25.  As explained below, the American Honda Companies and the Dealers are separate corporate entities who do not satisfy the requirements of an agency relationship.  Moreover, the American Honda Companies have not ratified the Dealers' places of business as their own.  As such, imputing any physical place of business of a Dealer to the American Honda Companies is improper.

### a.   The American Honda Companies and Dealers Are Separate Entities

A threshold inquiry when determining whether one company's place of business can be imputed to another for purposes of venue "is whether they have maintained corporate separateness."  *Andra*, 6 F.4th at 1289; *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 2:17-CV-728, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018) ("For purposes of venue, '[s]o long as a formal separation of [closely related] entities is preserved, the courts ordinarily will not treat the place of business of one corporation as the place of business of the other.'")); *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-CV-293, 2017 WL 6452802, *2 (E.D. Tex. Dec. 18, 2017) ("for a 'regular and established place of business' of a subsidiary to be imputed to a corporate relative, there must be a lack of formal corporate separateness.").

IV does not allege that the American Honda Companies and the Dealers are the same or affiliated entities, or alter egos of one another, and they are not.  The Dealers are all independently

██████████████████████

owned and operated corporations separate from the American Honda Companies.  Ex. 5 ¶ 21.

Indeed, Texas law prohibits Honda from (i) owning an interest in; (ii) operating or controlling; or

(iii) acting in the capacity of a motor vehicle dealership in most cases.  *See* Tex. Occ. Code

§ 2301.476(c).[6]  Therefore, the Dealers' places of business should not be imputed to the American

Honda Companies venue under the Federal Circuit's decision in *Andra*.  *Andra*, 6 F.4th at 1289.

          **b.**       **The Dealers Are Not American Honda Companies' Employees or Agents**

IV's purported agency theory also fails because the Dealers are not agents of the American

Honda Companies.  "The essential elements of agency are (1) the principal's right to direct or

control the agent's actions, (2) the manifestation of consent by the principal to the agent that the

agent shall act on his behalf, and (3) the consent by the agent to act."  *Andra*, 6 F.4th at 1287–89

(internal citations omitted).  To determine whether agency exists, a plaintiff must show that the

principal has "interim control" over the agent's actions, and that the agent's actions are regular

and directed toward the principal's business. *In re Google*, 949 F.3d at 1345–46.  None of these

factors is present here.

The relationship between AHM and each Dealer is strictly a contractual, arms-length

relationship for services.[7]  Ex. 5 ¶ 20.  ████████████████████████████

████████████████████████████████████████  ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[6] While there are some exceptions to this rule for temporary ownership, no such circumstances apply here.  *See id.* § 2301.476(d), (g).

[7] The four other American Honda Companies also have no agency relationship with any dealer. HAM, HMA, and HMI no longer exist, and when they did, did not have a relationship with any Dealer; and the fourth—AHFC—has only a minimal relationship through its provision of financing to purchasers and lessees.



*See In re Google*, 949 F.3d at 1340–41, 1346–47 (agreement restricting relocation of services and requiring the provision of equipment and other services did not amount to interim control sufficient to establish an agency relationship); Restatement (Third) of Agency § 1.01 ("The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents.").

Far from creating a principal-agent relationship,

With respect to dealer facility planning, product support, promotion, and advertising support,

15



Likewise, with respect to product sales, service, and training,

The recent Federal Circuit decision in *Andra* confirms that the Dealers cannot satisfy the venue requirement for the American Honda Companies.  In *Andra*, Plaintiff alleged that venue was proper over "Non-Store Defendants" (corporations without "employees, stores, or any other

physical presence" in the district) based on the physical presence of related corporate entity stores in the district. *Andra Grp.*, 6 F.4th at 1286. The Federal Circuit disagreed because the Non-Store Defendants did not have "the right to direct or control" the stores' employees, an essential element of an agency relationship. *Id.* at 1289. This was so despite Plaintiff's allegations that the Non-Store Defendants: (1) were related corporate entities; (2) controlled the stores by dictating store operations, hiring, and conduct; (3) made broad public statements about group real estate and investments; (4) required stores to follow a code of conduct; (5) dictated handling and returns of merchandise; and (6) closely controlled distribution of sales and products. *Id.* at 1288. The present action presents an even clearer case than in *Andra*: but AHM and the Dealers are not related corporate entities (unlike in *Andra*). *Id.* ¶ 21; *see also Andra Grp.*, 6 F.4th at 1288. And the other Honda defendants have no contractual relationship with the Dealers. Ex. 5 ¶ 18. Thus, the Dealers are not American Honda Companies' employees or agents.

Defendants acknowledge that this Court has reached a different conclusion in connection with different entities in its recent Report and Recommendations in *Arigna*.[8] Defendants respectfully suggest that the Court should reach the opposite conclusion under the facts set forth in this motion. First, unlike in either of the *Arigna* opinions, three of the American Honda Companies at issue here have no relationship with the dealers whatsoever. Ex. 5 ¶¶ 11, 18. And even then, unlike in *Arigna*,

---

[8] The Court reached a similar conclusion in recommending denying Mercedes-Benz USA's motion to dismiss in the same case. *See Arigna*, D.I. 424 at 9–11.



Alternatively, Defendants respectfully submit that a conclusion that the Dealers satisfy the venue requirements for the American Honda Companies would be incorrect under controlling Federal Circuit precedent, including *Andra*. As *Andra* explains, without the right to direct or control the Dealers' employees, no agency relationship exists. 6 F.4th at 1289. ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is insufficient to confer an agency relationship. *Andra Grp.*, 6 F.4th at 1288–89; *Google*, 949 F.3d at 1345. Indeed, courts in other districts have reached the opposite conclusion to *Arigna*. *See, e.g.*, *Omega Patents v. Bayerische Motoren Werke AG*, 508 F. Supp. 3d 1336, 1342–43 (N.D. Ga. 2020) (denying plaintiff's ratification theory when analyzing similar dealer sales agreements, noting that, "[a]t best, [plaintiff's] allegations show BMW[] maintains a mutually beneficial, coordinated business relationship with the dealerships to sell its products to customers in this District."); *West View Research, LLC v. BMW of N. Am., LLC*, No. 16-CV-2590, 2018 WL 4367378, at *6–8 (S.D. Cal. Feb. 5, 2018) (same).

### c. American Honda Companies Have Not Ratified the Dealers' Place of Business as Their Own

IV's argument that the American Honda Companies have "ratified" the Dealers' locations as regular and established businesses also fails. D.I. 1 ¶¶ 12–23. The Federal Circuit has outlined

several considerations for determining whether a business has "ratified" a place of business, including "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place," "the storing of materials at a place in the district so that they can be distributed or sold from that place," and the "defendant's representations that it has a place of business in the district."  *Andra*, 6 F.4th at 1289 (quotation omitted).  But "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient"; rather, "***the defendant must actually engage in business from that location***."  *Id.*

IV has not shown that the American Honda Companies actually engage in business from the Dealers' locations.  As noted above, the Dealers are separate, independent corporate entities, and accordingly conduct their own business, not the American Honda Companies' business.

Nor have the American Honda Companies ratified the Dealer locations as their own through their actions.  IV contends that the American Honda Companies have ratified the Dealer locations through listing of the Dealers on their website, storing inventory, using Honda-branded promotional materials, offering Honda-branded services and warranty support, and training Dealer personnel.  D.I. 1 ¶¶ 14–23.  The Federal Circuit's decision in *Andra* confirms that this ratification theory fails.  In *Andra*, the plaintiff alleged that the Non-Store Defendants "ratified" the stores' locations by: (1) controlling store operations and holding out store locations as their own; (2) allowing merchandise to be returned in stores and directing customers to store locations; (3) distributing and selling its merchandise from store locations and listing stores as "registrants" on a website; and (4) maintaining a "unified business model" with stores.  6 F.4th at 1289–90.  The

Federal Circuit flatly rejected this theory, noting that (1) the Non-Store Defendants did not own or lease the store locations; (2) the "Find a Store" feature (like a "find a dealer" feature) pointed customers to store locations (not Non-Store Defendant locations); (3) the Non-Store Defendants carry out different business functions than Stores; and (4) a shared name "does not detract from the separateness of [Non-Store and Store] businesses." *Id.* at 1290.

IV's allegations here are even weaker than *Andra's*



*See* Section II.C, *supra.*

Under *Andra*, none of IV's venue allegations, even if accepted as true for purposes of this motion, establishes that the American Honda Companies conduct their business from a Dealer location within this District. For example, like *Andra*, listing the Dealers on AHM's website and directing customers to Dealers to test drive and purchase vehicles does not show that AHM, much less the other American Honda Companies, is conducting business from the Dealer locations. And, as in *Andra*,

Instead, they enable AHM to maintain an effective national network of dealers—*i.e.* a "unified

███████████████████████████████
████████████████████████

business model" like in *Andra*—that sells and services vehicles bearing the Honda name, which is

not sufficient to establish agency or ratification.  Moreover, IV's ████████████████

███████████████████████████████████████████████

██████████████████████████████████ *Andra*, 6 F.4th at

1288–90; *In re ZTE*, 890 F.3d at 1015 (a contractual relationship "does not necessarily make [a

first company's location] 'a regular and established place of business' of [a second company]").

As noted above, Defendants acknowledge this Court reached a contrary conclusion

regarding ratification with respect to different entities in *Arigna*.  *See Arigna*, D.I. 415 at 14;

*Arigna*, D.I. 424 at 14.  Defendants again respectfully suggest that the Court's decision should not

control here, at least under these facts, in light of controlling Federal Circuit precedent in *Andra*.

In particular, unlike here, BMW argued that *Andra* precluded any form of ratification where the

entities maintained separate corporate formalities, and the Court did not explicitly analyze whether

the dealers' relationship with BMW satisfied the *Andra* ratification analysis.  *Arigna*, D.I. 415 at

13–20.  In *Andra*, the Federal Circuit rejected the plaintiff's ratification theory that Non-Store

Defendants ratified store locations by, among other things, requiring store employees to follow a

code of conduct, dictating handling of returns, exclusively distributing and selling products at

stores, and using "Victoria's Secret" branding at stores.  *Andra*, 6 F.4th at 1288–90.  IV makes the

same allegations here: just as in *Andra*, the listing of Dealer locations on AHM's website, the use

of the Dealers as exclusive locations to purchase Honda-branded vehicles, to handle recalls, and

AHM's training of Dealer personnel to follow Honda policies is insufficient to establish an agency

relationship.  *Id.*; *see* D.I. 1 ¶¶ 14–23. ████████████████████████

███████████████████████████████

███████████████████████████████

██████████████

██  And the mere fact that the Dealers use Honda branding to advertise sales, services, and warranty support would at best resemble a "unified business model" with Dealers, which is insufficient to establish an agency relationship. *Andra*, 6 F.4th at 1290.

**B.     IV Fails to State a Claim for which Relief Can Be Granted Regarding Indirect Infringement**

For each of the Patents-in-Suit, IV generically lumps together the Defendants and asserts that "Honda" has committed induced and contributory infringement, without specifying what acts each entity allegedly committed to give rise to liability and without providing any facts supporting its allegations of intent. *See, e.g.*, D.I. 1 ¶¶ 77–80. These allegations are insufficient on their face as to all the Defendants, but in particular as to Honda Motor Co. ("HMC"). First, IV's only allegation addressing pre-suit knowledge is a generic statement that "Honda" had knowledge because of the "receipt of a letter dated October 18, 2021 and received on the same date." D.I. 1 ¶¶ 78, 93, 110, 125, 138, 151, 167, 186, 202, 223, 239. IV's failure to distinguish between each defendant fails to provide sufficient notice of HMC's alleged activity. *See, e.g.*, *Bowling v. Willis*, Case No. 4:18-CV-610-ALM-CAN, 2019 WL 2517090, at *9 (E.D. Tex. Apr. 2, 2019) (granting motion to dismiss allegations lumping defendants together). This is critical here, as the letter was delivered via courier to the headquarters of ***AHM*** in Torrance, California on October 18, 2021. Ex. 24 (Letter Attached to Complaint).[10] It was not addressed or delivered to HMC in Japan, *id.*, and HMC did not receive the letter in Japan in the 1-day period between when the letter was delivered to AHM and when suit was filed. IV does not allege otherwise.

---

[10] Although a district court typically must limit itself to the contents of the pleadings when considering a motion to dismiss for failure to state a claim, documents attached to a defendant's motion to dismiss can be considered "if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quotation omitted). Here, the October 18 letter is specifically and repeatedly referenced in IV's Complaint, *see, e.g.*, D.I. 1 ¶ 78, and its consideration is proper.

Second, IV's only allegations pertaining to Honda's alleged intent for induced infringement are its generic, threadbare recitals that "Honda induces such acts of infringement by its affirmative action of providing and promoting the described hardware and/or software components and features in the Honda Count I Automobiles that when used in their normal and customary way as intended and designed by Honda." *See, e.g.*, D.I. 1 ¶ 79. Because IV "fail[s] to allege *any* facts identifying, even at a basic level," how Honda allegedly induces customers to use those products in an infringing manner, its allegations are insufficient. *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015); *see also Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quotation omitted).

Third, as to contributory infringement, IV again only repeats the elements of the standard without alleging *any* facts showing that Honda knew that the combination for which its components were made were infringing. *See, e.g.*, D.I. 1 ¶ 80 ("Honda has also committed, and continues to commit, contributory infringement by, *inter alia*, knowingly selling products and/or methods or services that when used cause the direct infringement of one or more claims of the '283 Patent by a third party, and which have no substantial non-infringing uses, or include a separate and distinct component that is especially made or especially adapted for use in infringement of the '283 Patent and is not a staple article or commodity of commerce suitable for substantial non-infringing use."). IV's failure to include any factual basis for its allegations warrants dismissal. *See Core Wireless*, 2015 WL 4910427, at *5.

Moreover, even if IV's allegations contained plausible facts sufficient to satisfy FRCP 8's notice requirement for intent for inducement or contributory infringement—which they do not— by lumping all the defendants together, IV's allegations fail to provide any specificity as to what

23

acts each entity allegedly committed. *Bowling*, 2019 WL 2517090, at *9. In particular, IV's allegations provide no factual basis to show that HMC knew of the patents, had sufficient intent to infringe, or committed any specific act inducing or contributing to any alleged infringement. Accordingly, IV's indirect infringement allegations against all the Defendants should be dismissed, but at a minimum the allegations against HMC should be dismissed.

### C. Alternatively, This Case Should be Transferred to the Central District of California

In the event the action is not dismissed, both the private and public interest factors recognized by the Federal Circuit and this District favor transfer to the Central District of California, which is a proper venue for this case and more convenient to the parties and witnesses.

#### 1. This Action Could Have Been Filed in the Central District of California

IV could have brought this case in the Central District of California. Venue is proper in the judicial district "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). AHM and AHFC are each California corporations, D.I. 1 ¶¶ 6–7, and are both headquartered in Torrance, California, which sits in the Central District. In addition, venue is proper over HMC in the Central District under § 1391(b)(3). The Accused Vehicles are sold in the Central District of California. Because the other Honda defendants no longer exist and should therefore be dismissed, they are not relevant to the transfer inquiry. As such, IV could have filed this action in the Central District.

#### 2. The Private Interest Factors Favor Transfer

##### a. The Ease of Access to Sources of Proof Heavily Favors Transfer

Access to sources of proof strongly favors transfer. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*,

566 F.3d at 1345.  The location of documents and physical evidence remains a "meaningful factor" in the transfer analysis.  *Volkswagen II*, 545 F.3d at 316; *see also Unicorn Energy GMBH v. Tesla, Inc.*, No. 2:20-CV-00338-JRG, 2021 WL 4034515, at *1 (E.D. Tex. Sept. 3, 2021).

Honda does not maintain documents in this District.  Instead, documents concerning the design, R&D, engineering, marketing, sales, and financial accounting of the accused functionality are located in California or Ohio.  Ex. 5 ¶¶ 10, 14. Although AHFC has an Irving, Texas location (which is outside of this District), Honda is not aware of any relevant documents there (or otherwise in AHFC's possession).  *Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*, No. 2:17-CV-00100-JRG-RSP, 2017 WL 4076052, at *3 (E.D. Tex. Sept. 14, 2017) (ordering transfer where no relevant documents at defendant's Plano location).  As explained above, AHFC provides financing for the purchase of Honda vehicles and has no involvement in the research, design, development, or sales of the Accused Vehicles.  Ex. 5 ¶¶ 8, 19.  Likewise, Honda dealers have no involvement in the research, design, or development of the Accused Vehicles.  *Id.* ¶ 13.  Although Honda dealers sell Honda vehicles, IV identifies nothing that would be uniquely in possession of a Honda dealer in this District, as opposed to a Honda dealer in the Central District of California.  *Unicorn Energy GMBH*, 2021 WL 4034515, at *2 (ordering transfer where information regarding customers and certified Tesla partners "are just as available—if not more so—in the [transferee d]istrict").

IV likewise lacks any connection to this District.  IV is a Delaware corporation with a principal place of business in Washington state, with no apparent location here.  IV has not identified any documents or other evidence located here.  *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, No. 2:15-CV-01702-RWS-RSP, 2017 WL 1109865, at *2 (E.D. Tex. Mar. 24, 2017) (transferring case where defendant's evidence was primarily located in California or overseas, and patentee lacked connection to this District).  This factor strongly favors transfer.

        **b.**        **The Availability of Compulsory Process to Secure the**

███████████████████

**Attendance of Witnesses Favors Transfer**

The location of third party witnesses and the availability of compulsory process favors

transfer when "a transferee district has absolute subpoena power over a greater number of non-

party witnesses" than the transferor district. *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874

(E.D. Tex. 2013). The Federal Circuit thus routinely requires transfer where the transferee forum

can compel more relevant witnesses to attend depositions and trials than can the transferor forum.[11]

"The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of

transfer, and not only slightly." *Genentech*, 566 F.3d at 1345.

As to critical sources of third party discovery, ████████ headquarters in California

strongly favors transfer. IV bases its infringement allegations for one of the Patents-in-Suit on

functionality allegedly included in WiFi chips supplied by ████████   ████████ employees

are therefore likely located at its ████████ headquarters, which is indisputably closer to the

Central District of California than to this District. *See Core Wireless Licensing, S.A.R.L. v. Apple,*

*Inc.*, No. 6:14-CV-751, 2015 WL 11143431, at *2, *4, *7 (E.D. Tex. Aug. 31, 2015) (transferring

to N.D. Cal., in part because Apple's products contained processors supplied by California-based

Intel). In addition, ████████ supplies the cellular chips that are subject to IV's infringement

allegations for four of the Patents-in-Suit. ████████ has its communications equipment division in

San Diego, meaning knowledgeable employees are likely to be located there, as opposed to

████████ Texas locations, which are focused on semiconductors. Ex. 25. By contrast, based on

its current investigation, Honda is not aware of suppliers with knowledgeable employees in this

---

[11] *In re Toa Techs., Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013); *In re Biosearch Techs., Inc.*, 452 F. App'x 986, 988 (Fed. Cir. 2011); *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011); *In re Microsoft Corp.*, 630 F.3d 1361, 1363 (Fed. Cir. 2011); *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *In re Genentech*, 566 F.3d at 1345.

████████████████████

District.[12]  *See Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-CV-1302, 2017 WL 4225202, at

*6 (E.D. Tex. Sept. 22, 2017) (granting transfer where defendant "established pool of likely third

party witnesses as to whom the Northern District clearly exercises compulsory process"); *Godo*

*Kaisha IP Bridge 1 v. Intel Corp.*, No. 2:17-CV-00676-RWS, 2018 WL 11363367, at *1 (E.D.

Tex. Sept. 28, 2018) (ordering transfer even though defendant had place of business in this

District).

        In addition, eight named inventors appear to reside in California, including four within the

Central District.  No inventor appears to reside in this District.  Not only is the Central District

more convenient for the California-named inventors, but the Central District would have the ability

to compel ███████████████ and the California inventors to testify at trial,[13] which weighs in

favor of transfer.  *See NextGen Innnovations, LLC v. II-VI, Inc.*, No. 20-CV-854, Dkt. 38 (E.D.

Tex. July 2, 2021) (transferring case where five third-party witnesses resided in transferee venue,

while only three resided in transferor venue); *Uniloc 2017 LLC v. Google LLC*, No. 2:18-CV-

00504-JRG-RSP, 2020 WL 3064460, at *6 (E.D. Tex. June 8, 2020) (granting transfer where

defendant "made a credible showing that the Northern District would have subpoena power over

many of the identified witnesses pursuant to Rule 45(c)").

        c.      **The Cost of Attendance for Willing Witnesses Favors Transfer**

        The third private interest factor considers the cost of attendance for willing witnesses,

which "is probably the single most important factor in a transfer analysis." *In re Google Inc.*, No.

2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017).  The proposed transferee venue is

"clearly more convenient" where, as here, most of the potential witnesses and relevant evidence

---

[12] Although ███████████████████████████████████ it does not appear that
relevant ███████████ are located there, and, in any event, ██████ has a California location.
[13] Honda cannot confirm the willingness of any identified third party to attend trial at this time.

are located in the transferee venue.  *See In re Nintendo Co.,* 589 F.3d 1194, 1197 (Fed. Cir. 2009);

*Hoffman-La Roche*, 587 F.3d at 1336–37.  The Fifth Circuit's "100-mile rule" provides that when

the distance between the transferor and proposed transferee venues exceeds 100 miles, "the factor

of inconvenience to witnesses increases in direct relationship to the additional distance to be

traveled."  *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004) ("*Volkswagen I*");

*Genentech*, 566 F.3d at 1343.  The Central District is far more convenient for potential party

witnesses given that no Honda witnesses reside in this District, but many live and work in

California, which weighs heavily in favor of transfer.

Many of Honda's US-based employees who are knowledgeable about the design, R&D,

sales, marketing, and/or financial accounting of the Accused Vehicles are based in and near

AHM's Torrance Headquarters or Ohio, and none works in this District.  Ex. 5 ¶ 14.  AHM has

identified at least four employees that would likely serve as witnesses in this case and may be

required to testify at trial.  *See* Section II.B, *supra*.  Each of the AHM witnesses identified work

less than a one-hour drive from each of the Central District courthouses, whereas travelling to

Marshall would require all of Honda's California witnesses to travel more than 1,500 miles.  Given

the location of these relevant witnesses in or near the Central District, the cost and inconvenience

to Honda caused by making these witnesses available to testify during fact discovery and at trial

would be substantially higher if this case remains here.  It is an "obvious conclusion" that it is

more convenient for these witnesses to testify close to home.  *See Volkswagen II*, 545 F.3d at 317.

Any witnesses in Japan or Ohio will need to travel a distance greater than 100-miles

regardless of the venue, as would IV's potential corporate witnesses, who will likely travel from

Washington state.  *See* D.I. 1 ¶¶ 2–3.  That does not weigh against transfer because those witnesses

will travel regardless of where the case is venued.  *Genentech*, 566 F.3d at 1344; *see also In re*

*Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020).  The identification of the many relevant Honda witnesses in the Central District and the absence of relevant witnesses in this District strongly favors transfer.  *Intel*, 2018 WL 11363367, at *1 (ordering transfer where defendant "identified some party witnesses likely to testify at trial for whom Oregon would be more convenient").

### d.      No Practical Problems with Transfer Exist

No practical problems are presented by transferring this case to the Central District because this case is in the very early stages of litigation.  *Mobilemedia Ideas LLC v. Research in Motion Ltd.*, No. 10-CV-113, 2011 WL 13137111, *4 (E.D. Tex. Aug. 30, 2011).  Honda has not yet filed a responsive pleading, the parties have not exchanged initial disclosures, and the Court has not entered a scheduling order.  While IV has also filed a case against Toyota in this District, alleging infringement of many of the same patents, that is no impediment to transfer.  Honda and Toyota are different companies and have different accused products.  Moreover, IV has filed another case alleging infringement of many of the same patents against GM in a different district (W.D. Tex.).  Having chosen to litigate similar patents in different fora, IV cannot complain that litigating against Honda in a more convenient District would impose undue inefficiencies.  As such, this factor favors transfer, for the Central District is just as equipped to hear this case, and the events that have occurred to-date would have also occurred in the Central District.  *Id.* (ordering transfer despite co-pending case with same patents because both cases were in their infancy).

### 3.      The Public Interest Factors Favor Transfer

### a.      The Central District Has a Strong Local Interest in this Case

The Central District's interest in having local interests decided at home strongly weighs in favor of transfer. "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Hoffmann-La Roche*, 587 F.3d at 1338; *see also Uniloc 2017*, 2020 WL 3064460, at *5 (transferee district has strong

██████████████████████

local interest when plaintiff's allegations "call into question 'the work and reputation' of engineers" in the district, and non-parties, including prior art inventors, are located there). Here, AHM and AHFC are each headquartered in the Central District.  AHM employs over 2,400 people in California, including at least 2,090 in the Central District.  Ex. 5 ¶ 12.  No Honda employees have a regular place of business here,[14] and Honda's R&D, management, and decision-making related to the accused functionality occurs in California, Ohio, or Japan, not here.  Ex. 5 ¶ 14.  IV has no presence in this District, and none of the Patents-in-Suit have any apparent connection to this District. These facts favor transfer.  *Uniloc 2017*, 2020 WL 3064460, at *5.

### b.      The Remaining Public Interest Factors Are Neutral.

The remaining public interest factors are neutral or inapplicable.  One public interest factor considers administrative difficulties that may flow from court congestion and considers "[t]he speed with which a case can come to trial and be resolved."  *Genentech*, 566 F.3d at 1347.  The median time from filing to trial of a patent case is approximately 25 months in the Eastern District and approximately 27 months in the Central District.  Exs. 26–27.  The speed with which the case may be resolved is not significantly different (less than 8%) in either district.  Moreover, because this case arises under federal patent law, both districts are familiar with and can apply the patent laws to this case.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).

## VI.   CONCLUSION

As described above, this Court should dismiss Plaintiffs' Complaint.  Alternatively, this case should be transferred to the Central District of California.

---

[14] As explained above, the presence of Honda and/or Acura dealers in this District do not establish any more of a connection than Honda and/or Acura dealers in any other district.  Even if they did, there are 163 authorized Honda and Acura auto dealerships in California, compared to 84 authorized Honda and Acura auto dealerships in Texas.  Ex. 5 ¶ 13.

Dated:  January 31, 2022

Respectfully submitted,

/s/ Melissa R. Smith

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Michael W. De Vries, P.C.
**KIRKLAND & ELLIS LLP**
555 South Flower Street, Suite 3700
Los Angeles, CA, 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
michael.devries@kirkland.com

Adam Alper, P.C. (*pro hac vice forthcoming*)
Akshay Deoras, P.C. (*pro hac vice forthcoming*)
Reza Dokhanchy (*pro hac vice forthcoming*)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
adam.alper@kirkland.com
akshay.deoras@kirkland.com
reza.dokhanchy@kirkland.com

Leslie M. Schmidt, P.C. (*pro hac vice forthcoming*)
Jonathan D. Brit (*pro hac vice forthcoming*)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
leslie.schmidt@kirkland.com
jonathan.brit@kirkland.com

**Attorneys for Defendants**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email per Local Rule CV-5(a)(3) on January 31, 2022.

 */s/ Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that a motion to seal this document is being filed contemporaneously pursuant to Local Rules CV-5(a)(7) and CV-7(k).

 */s/ Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF CONFERENCE**

In compliance with Local Rule CV-7(h), I hereby certify that on January 31, 2022 counsel for Honda, Leslie M. Schmidt, P.C., Akshay Deoras, P.C., and Tom Gorham met by telephone with counsel for IV, ThucMinh Nguyen, Marcus A. Barber, and Jonathan K. Waldrop to discuss Honda's Motion to Transfer.  IV stated that it opposed Honda's motion.  No agreement could be reached, and the parties' discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Melissa R. Smith*
Melissa R. Smith